UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN GOODRICK,<br><br>                Plaintiff,<br><br>v.<br><br>SGT. FRENCH, CORRECTIONAL MEDICAL SERVICES, PAUL DELAPLAIN, and RORY YORK,<br><br>                Defendants. | Case No. 3:09-00355-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

      Several motions are pending in this prisoner civil rights matter, which has been reassigned to the undersigned District Judge from United States Magistrate Ronald E. Bush. (Dkt. 58.) The Court finds that decisional process would not be aided by oral argument, and it will resolve these matters on the record after consideration of the parties' written submissions. D. Idaho L. Civ. R. 7.1(d).

      Having fully considered the parties arguments, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

      Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC). Plaintiff suffers from several medical problems, including hypertension, hepatitis C, arthritis, and degenerative disc disease. He alleges that he is in constant pain from his

ORDER - 1

damaged back and hip. He contends that prison officials and employees have been deliberately indifferent to his serious medical needs, in violation of his right against cruel and unusual punishment under the Eighth Amendment.

Plaintiff claims that the medical contractor, Correctional Medical Services (CMS), has a policy of denying adequate care to prisoners in an effort to cut costs and make a profit. He further asserts that Paul Delaplain, a physician's assistant at the Idaho Maximum Security Institution, prescribed naproxen and steroids as pain relievers, neither of which, according to Plaintiff, are approved for use in patients with liver disease. After Plaintiff was transferred to the Idaho Correction Center at Orofino (ICI-O), a nurse practitioner, Rory York, allegedly refused to issue medical memos for Plaintiff related to standing, bending, lifting, and having an extra pillow, and York "tried to push Ibuprofen off on the Plaintiff knowing the same to be forbidden for anyone with liver disease as it damages the liver and stores up in the liver." (Dkt. 3, ¶ 59, 64.) Plaintiff alleges that his requests for a double mattress and a heating pad were likewise rejected, and he contends that a correctional officer at ICI-O, Sergeant French, refused to allow him to be moved to a lower tier despite a medical memo authorizing the same.

The magistrate judge conducted an initial review of the Complaint, as required by 28 U.S.C. §§ 1915 and 1915A, and allowed Plaintiff to go forward with his claims against Defendants Delaplain, York, French, and CMS. (Dkt. 7, pp. 6-7.) Other claims and defendants were dismissed. (*Id*.) Defendants French, York, and CMS have since appeared

ORDER - 2

and submitted their Answers to the Complaint. (Dkts. 11, 13.) Defendant Delaplain has not been served with process and has not appeared.

Defendant French has now filed a Motion to Dismiss (Dkt. 19), in which he asserts that Plantiff has failed to exhaust his administrative remedies with respect to the claim against him. French has also submitted a Motion to Stay Discovery (Dkt. 20) and, later, a Motion to Stay the entire case because he has been recalled to active military duty and transferred out of Idaho (Dkt. 51).

Plaintiff has filed several motions of his own, including motions to compel Defendants York and CMS to provide certain discovery to him. (Dkts. 25, 26, 39, 40.) Defendants York and CMS have filed a Motion for Summary Judgment, to which Plaintiff has responded. (Dkts. 40, 57, and 59.) Other motions will be addressed as necessary in the course of this Memorandum Decision.

## DEFENDANT FRENCH'S MOTION TO DISMISS

The Court will first take up Defendant French's Motion to Dismiss the claim against him. Because the Court agrees that Plaintiff did not exhaust administrative remedies related to his current claim that French ignored a medical memo to house Plaintiff on a lower tier, the Court sees no purpose in staying the case based upon French's recall to active military service. Therefore, the Motion to Dismiss will be granted, and French's Motion to Stay Discovery and Motion to Stay the case will be denied as moot.

### 1. Standard of Law

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Where there is an informal and relatively simple prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Id*. at 103. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). The district court may consider matters outside of the pleadings and can resolve

disputed issues of fact, if necessary. *Id*. Defendants bear the burden of raising and proving the absence of exhaustion. *Brown*, 422 F.3d at 936-37.

**2. The IDOC's Administrative Review Process**

A prisoner must attempt to resolve any "problem or action" related to his incarceration using the prison's internal grievance system. (Dkt. 19-2, Ex. A, p. 3.) IDOC has a relatively straightforward three-step system, which requires the prisoner (1) to submit an informal concern form describing the problem, followed by (2) the filing of a formal grievance and (3) an appeal of any adverse decision. (*Id.*)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Dkt. 19-2, Affidavit of Loy Mechling, ¶ 5.) If the issue is not resolved, the prisoner must then complete a grievance form, attach a copy of the concern form, and file the grievance within 30 days of the incident. (*Id*. at ¶ 6.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 10 days. (*Id*. at ¶ 8.)

After the staff member responds, the coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*. at ¶ 8.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually a deputy warden. (*Id*. at ¶ 10.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*. at ¶¶ 10-11.)

### 3. Discussion

In support of his Motion to Dismiss, Defendant French has submitted an affidavit from the Grievance Coordinator at ICI-O, Loy Mechling. Mechling has reviewed her records covering the relevant time frame–April 1, 2009, through August 31, 2009–for grievances submitted by Plaintiff to determine whether he complained about Sergeant French's lack of compliance with a "bottom tier medical memo." (Mechling Aff., ¶ 13.) Although she found seven grievances submitted by Plaintiff in that time period, she could not locate a grievance related to this particular issue. (*Id*.)

Plaintiff responds that he sent a concern form to French and, contrary to Mechling's claim, that he filed a formal grievance when French failed to respond. He has supplied a photocopy of a grievance form in which he asks to be "placed on the bottom tier per medical orders to help prevent excessive pain." (Dkt. 23, Ex. 1.) He has also provided affidavits from himself and other inmates who contend that French was aware of a medical memo but refused to move Plaintiff.[1] (Dkt 23; Affidavits of Inmates Noe, Wilkerson, Carle, Farber, and Shook.) According to Plaintiff, he never received a response to his grievance, and he speculates that it may have been destroyed. (Dkt. 23, pp. 6-7.) Based on these allegations, Plaintiff argues that his failure to complete the administrative review process by appealing to the facility head should be excused because he could not appeal from the lack of response.

---

[1] French's Motion to Strike these affidavits (Dkt. 28) will be denied. The affidavits are only minimally probative on the exhaustion issue, and the Court has reviewed them with due regard to the reliability and hearsay concerns expressed by Defendant.

The Court harbors some doubt that Plaintiff actually routed the grievance through the appropriate channels at the correct time. He has not attached a copy of the concern form that he allegedly sent to Sergeant French, which is required by policy. And, since 2008, the Grievance Coordinator has been required to log all grievances into an electronic database, including grievances that are not processed for various reasons. (*Id.* at ¶ 3.) French has provided the electronic record of the seven grievances that Plaintiff submitted during the relevant time frame, one of which was not processed. (*Id.* at Exhibits B-H.) Plaintiff's suggestion that prison officials may have intentionally destroyed the grievance or deleted any record of receiving it is unsupported speculation.

In any event, when a prisoner alleges that an official's malfeasance or negligence excuses the prisoner's failure to complete all of the steps in a grievance procedure before filing a lawsuit, the prisoner must still show that he was reasonably diligent in pursuing relief through the administrative system. *See Nuñez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (holding that, when a prisoner has been misled about proper procedures, he must still take "reasonable and appropriate steps" to exhaust his claims). This is so because the exhaustion requirement is designed to give officials notice of a prisoner's complaint for possible resolution; it is not artificial construct to be gamed by unscrupulous prison officials *or* a savvy prisoner as means to set up litigation. In other words, a prisoner who has sent a grievance but has not received a response must take some reasonably minimal steps to follow up in an effort to solve his problem.

ORDER - 7

Here, Plaintiff clearly understood the grievance procedure, and he was not bashful about forwarding written complaints related to the conditions of his confinement. Even if the Court assumes that he submitted the grievance at the correct time and that officials failed to respond, the record shows that he did not inquire as to when his grievance would be resolved, or even whether it had been received. Plaintiff simply did not pursue the matter further before filing his lawsuit, which shows a lack of diligence.

This finding is bolstered by a letter Plaintiff wrote to Victoria Southwick, an IDOC administrative official, near the time of his alleged dispute with Sergeant French. In that letter, Plaintiff addresses his medical issues, including his back pain. He writes that he has a lower tier restriction and that he is climbing the stairs, but that he is "forgoing the pain because [he] understand[s] that P.C. will be moved to another tier very soon and [he] will be placed on the lower level at that time." (Dkt. 27-1, Ex. A, p. 2.) He does not mention his problem with French, or a concern form that he allegedly sent to French only three days before. As anticipated, he was moved to a lower tier in July 2009. (Dkt. 27-2, Ex. I.)

The Court is therefore persuaded by French's argument that the weight of the evidence establishes that even if Plaintiff began the grievance process, he later abandoned any attempt to resolve the issue administratively. (Dkt. 27, p. 9.) Under the circumstances of this case, then, French has proven that Plaintiff failed to exhaust his available administrative remedies. Given that the only claim against French will be dismissed for failure to exhaust, his Motion to Stay Discovery and Motion to Stay the case are deemed moot.

# PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY

Plaintiff has filed motions to compel Defendants CMS and Rory York to comply with his discovery requests. (Dkt. 25, 39, 40.) Defendants contend that they have responded adequately to his requests.

Federal Rule of Civil Procedure 26(b) allows "[p]arties [to] obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The term "relevant" is further defined as information that is "reasonably calculated to lead to the discovery of admissible evidence," and it "need not be admissible at trial." Fed. R. Civ. P. 26(b)(1). Although relevance has a broad meaning, district courts are given wide discretion to apply the discovery rules in a way that will achieve the policy of the Federal Rules of Civil Procedure; namely to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

If the answering party fails to respond adequately in discovery, the propounding party can move for an order compelling discovery under Federal Rule of Civil Procedure 37(a) after meeting and conferring with the opposing side. Any motion to compel "must include a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion." D. Idaho L. Civil R. 37.2(a). The court should deny a motion to compel if the information requested falls outside the scope of discovery. *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir.1992).

Plaintiff's remaining claims against Defendants CMS and York are that he was deprived of adequate medical care for hepatitis C and for his degenerative back condition, and his discovery requests must be reasonably calculated to lead to admissible evidence related to those claims.[2] The Court has reviewed Defendants' responses to his requests, and, with the limited exception noted below, finds that they have responded appropriately. In particular, it appears that Defendants have provided Plaintiff with his medical records covering the relevant dates, which should be sufficient to allow Plaintiff to support his claims and to answer Defendants' Motion for Summary Judgment. Defendants cannot be expected to provide documents or materials that either do not exist or that are not within their control, nor can they answer interrogatories that are argumentative.

However, if Defendants have access to written policies or criteria that guide medical providers *or* administrators when making or authorizing treatment decisions for prisoners with hepatitis C and/or degenerative back conditions, they should disclose those items to Plaintiff. Their current general response is that the medical providers make independent decisions on a case-by-case basis, taking into account their education, training, and experience, which suggests that more specific criteria informing treatment decisions simply do not exist at either the provider or administrative level, but the Court

---

[2] Plaintiff no longer complains about the treatment of his high blood pressure. (Dkt. 57, p. 3.)

**ORDER - 10**

finds their response to be somewhat vague on that point.[3] If there are no written policies or criteria related to these matters, then Defendants should make that clear. Further, if Defendants claim a legitimate privilege with respect to any such items, they should submit the items in camera by filing the documents with the Court via the CM/ECF system under seal.

Plaintiff also takes issue with CMS's refusal to disclose its bids and contracts with the State of Idaho, but he has not demonstrated how disclosure of those documents would be reasonably likely to lead to the discovery of admissible evidence regarding a lack of medical care for his conditions.

Accordingly, Plaintiff's Motions to Compel will be granted in part and denied in part. If Plaintiff receives additional discovery as a result of this Order, he will be permitted to file a supplement response to Defendants' Motion for Summary Judgment, and the Court will not rule on the Motion at this time. Defendants Motion to Strike (Dkt. 61) is not yet ripe.

## OTHER MOTIONS

Plaintiff has submitted several other motions, only two of which merit comment here.

---

[3] It appears that Plaintiff may have obtained some type of written policy for treating hepatitis C (Dkt. 59, "Absolute Exclusion Criteria"), though it is unclear whether this is CMS policy and where Plaintiff got the document.

**ORDER - 11**

Plaintiff has provided a Notice to the Court of Defendant Paul Delaplain's Address for Service (Dkt. 24), which the Court construes as a motion to assist Plaintiff in effecting service of process on Delaplain. Because Plaintiff is proceeding in forma pauperis, the Court must assist him with service. Fed. R. Civil P. 4(c)(3). Therefore, the Court will order the United States Marshal to attempt service at the address provided by Plaintiff.

Plaintiff also has requested that the Court appoint a medical expert under Rule 706 of the Federal Rules of Civil Procedure. (Dkt. 26.) Plaintiff has provided no persuasive reason for the Court to exercise its discretion and appoint a medical expert. The Court will deny this motion without prejudice to reconsideration later, if appropriate.

## ORDER

IT IS ORDERED:

1. Defendant French's Motion to Dismiss (Dkt. 19) is GRANTED. The claim against Defendant French is DISMISSED for failure to exhaust administrative remedies.

2. Defendant French's Motion to Stay Discovery (Dkt. 20) and Motion to Stay the case (Dkt. 51) are deemed MOOT.

3. Defendant French's Motion to Strike Inmate Affidavits (Dkt. 28) is DENIED.

4. Plaintiff's Motion to Compel Defendant CMS to Respond to Discovery Requests (Dkt. 25), Motion to Renew Motion to Compel Defendant CMS to Comply with Discovery Response (Dkt. 39), and Motion to Compel

Defendant York to Comply with Discovery Requests (Dkt. 40) are GRANTED in part and DENIED in part, as set forth herein. Defendants shall clarify or supplement their discovery responses consistent with the Court's Order on or before October 20, 2010. If, and only if, Defendants provide additional material in discovery beyond that which they have already disclosed, Plaintiff may file a supplemental response to Defendant CMS and York's Motion for Summary Judgment on or before November 19, 2010. Under those circumstances, Defendants may, at their option, file a supplemental reply on or before December 3, 2010.

5. Plaintiff's Notice to the Court of Defendant Paul Delaplain's Address for Service (Dkt. 24), construed as a motion for service of process, is GRANTED. The Clerk of Court shall issue a Summons and forward copies of the Summons, the Complaint (Dkt. 3), the Court's Initial Review Order (Dkt. 7), and this Order to the United States Marshal for service on Defendant Paul Delaplain, Physicians Assistant, at the Idaho Maximum Security Institution, P.O. Box 51, Boise, Idaho 83707.

6. Plaintiff's Motion for Court Appointed Medical Expert (Dkt. 26) is DENIED without prejudice.

7. Plaintiff's Motion for Judicial Notice and Supplementing the Record (Dkt. 35) is DENIED.

8. Plaintiff's Motion to Stay Motion for Summary Judgment (Dkt. 48) is deemed MOOT.

9. Plaintiff's Motion for Extension of Time to File Reply to Plaintiff's Motion for Declaratory and Injunctive Relief (Dkt. 55) is GRANTED to the extent that Plaintiff believes that this issue is still in dispute. He shall file a reply, if any, on or before October 7, 2010.

DATED: **September 17, 2010**

Honorable Edward J. Lodge
U. S. District Judge