UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN GOODRICK,<br><br>            Plaintiff,<br><br>v.<br><br>SGT. FRENCH, CORRECTIONAL MEDICAL SERVICES, PAUL DELAPLAIN, and RORY YORK,<br><br>            Defendants. | Case No. 3:09-00355-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Several motions are pending in this prisoner civil rights matter. The Court finds that decisional process would not be aided by oral argument, and it will resolve these matters on the record after consideration of the parties' written submissions. D. Idaho L. Civ. R. 7.1(d).

Having fully considered the parties arguments, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC). Plaintiff suffers from several medical problems, including hypertension, Hepatitis C, arthritis, and degenerative disc disease. Plaintiff claims that the prison's medical contractor, Correctional Medical Services (CMS), has a policy of denying

adequate care to prisoners in an effort to cut costs and make a profit. He also asserts that Paul Delaplain, a physician's assistant at the Idaho Maximum Security Institution (IMSI), and Rory York, a nurse practitioner at the Idaho Correctional Center at Orofino (ICI-O), have refused to treat him or have offered treatment that is dangerous to his health.

The magistrate judge conducted an initial review of the Complaint and allowed Plaintiff to go forward with his Eighth Amendment claims against Delaplain, York, and CMS (the "CMS Defendants"). (Dkt. 7, pp. 6-7.) The magistrate judge also concluded that Plaintiff had stated a claim against Correctional Officer French for allegedly ignoring a medical directive to house Plaintiff on a bottom tier. (*Id*.)

In a Memorandum Order dated September 17, 2010, this Court dismissed Plaintiff's claims against Defendant French based on Plaintiff's failure to exhaust his administrative remedies before filing suit. (Dkt. 62.) The Court also denied Plaintiff's motions to compel discovery from the CMS Defendants, except that it ordered Defendants to produce "written policies or criteria that guide medical providers *or* administrators when making or authorizing treatment decisions for prisoners with hepatitis C and/or degenerative back conditions," or clarify that no such polices or criteria exist. (Dkt. 62, p. 10.)

Defendants CMS and York have filed a Motion for Summary Judgment, and Paul Delaplain, who previously had not been served with process, has since appeared in the case and has joined the other Defendants' Motion. (Dkt. 68, 73.) In addition to the CMS Defendants' Motion for Summary Judgment, Plaintiff has also submitted several motions.

**MEMORANDUM DECISION AND ORDER - 2**

# PLAINTIFF'S MOTION FOR RECONSIDERATION AND MOTION FOR RELIEF FROM ORDER

Plaintiff has filed two motions requesting the Court to reconsider aspects of its September 17, 2010 Memorandum Order. These motions will be denied.

1. Standard of Law

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal citation omitted). On reconsideration, the courts may correct "simple mistakes," as well as alter "decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). However, while a court "has the power to revisit prior decisions of its own . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted).

2. Exhaustion of Remedies as to Defendant French

In its Memorandum Order, the Court determined that Plaintiff had not exhausted his administrative remedies before filing suit against Defendant French based on French's alleged failure to comply with a "bottom tier memo," and it dismissed Plaintiff's claims against him. (Dkt. 62, p. 8.) Plaintiff argues that there are least disputed issues of material

**MEMORANDUM DECISION AND ORDER - 3**

fact as to whether he filed a grievance and whether prison officials lost or destroyed it. (Dkt. 64, pp. 3-4.)

While it is true that the Court noted that it "harbors some doubt" whether Plaintiff submitted any grievance complaining about his problem with French, the Court's decision did not turn on that point. Instead, the Court found that, regardless whether Plaintiff filed a grievance, he lacked diligence in seeing it through:

> Even if the Court assumes that he submitted the grievance at the correct time and that officials failed to respond, the record shows that he did not inquire as to when his grievance would be resolved, or even whether it had been received. Plaintiff simply did not pursue the matter further before filing his lawsuit, which shows a lack of diligence.

(Dkt. 62, p. 8.) The Court's finding was supported by, among other things, Plaintiff's letter to Victoria Southwick, in which he indicated that he is "forgoing the pain because [he] understand[s] that P.C. will be moved to another tier very soon and [he] will be placed on the lower level at that time." (Dkt. 27-1, Ex. A, p. 2.)

Plaintiff has not persuaded the Court that it made a clear error of fact or law that needs to be corrected. Moreover, contrary to Plaintiff's argument, the Court is permitted to resolve factual issues when considering a motion to dismiss on exhaustion grounds. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002).

### 3. Compelling Discovery from CMS Defendants

In the same Order, the Court denied Plaintiff's motions to compel discovery from the CMS Defendants, aside from ordering Defendants to clarify whether they have access to any written policies or criteria governing medical treatment decisions for Plaintiff's

conditions.

Plaintiff also seeks reconsideration of this aspect of the Court's decision. In particular, Plaintiff argues that he is entitled to a copy of CMS's contract with IDOC because he is a "third party beneficiary." This is a species of the same argument that Plaintiff has made at earlier points in this case. The Court finds no basis to reconsider its decision that Plaintiff failed to show that disclosure of the CMS's contract is reasonably likely to lead to the discovery of admissible evidence regarding a lack of medical care for Plaintiff's specific medical conditions.

Next, Plaintiff continues to assert that CMS Defendants are withholding policies that govern treatment decisions. This allegation has become a persistent refrain throughout this case, and CMS Defendants continue to respond that the only "policy" that they have is that each provider makes an independent decision how to treat a patient based on his or her education, training, and experience. The Court found Defendants' discovery responses to be somewhat vague as to whether they had access to any additional written polices or criteria that may guide or inform medical providers or administrators when making treatment decisions, and it ordered Defendants to disclose that information to Plaintiff, or to clarify that it does not exist. (Dkt. 62, pp. 13-14.)

In response to the Court's Order, Defendants submitted, *in camera*, a one-page document labeled "Correctional Medical Services Infection Control All In One," which appears to be a checklist for evaluating prisoners for infectious diseases, including Hepatitis C. Consistent with Defendants' claims, this document clearly indicates that it is

**MEMORANDUM DECISION AND ORDER - 5**

"for informational purposes only" and that it is not intended to take the place of an individual medical professional's clinical and professional judgment, but it also appears to be intended to guide the exercise of independent medical judgment. While the issue is close, the Court concludes that the "Correctional Medical Services Infection Control All In One" falls within the type of information that the Court has ordered to be disclosed to Plaintiff. To balance Defendants' concerns about confidentiality of this information with Plaintiff's right to examine the document, Defendants may, at their option, arrange for Plaintiff to inspect the document in the presence of a prison paralegal at reasonable times without retaining a copy for his personal records.

Nevertheless, the Court concludes that the document would not assist Plaintiff in establishing a genuine issue of material fact as to his remaining claims, as discussed below, and the Court will conditionally grant the CMS Defendants' Motion for Summary Judgment. In an abundance of caution, the Court will refrain from entering final judgment until Plaintiff has had an opportunity to file a supplement response on this limited issue and show why the Court's conclusion is incorrect.

## PLAINTIFF'S MOTION TO SUPPLEMENT HIS COMPLAINT AND/OR THE RECORD

Plaintiff seeks to supplement his Complaint or the record with new factual allegations reflecting events that have occurred since his filed his Complaint. Specifically, Plaintiff alleges that when he was at a medical visit, Physician's Assistant Matthew Valley told him that back problems were not listed under CMS "chronic care" policies.

**MEMORANDUM DECISION AND ORDER - 6**

(Dkt. 70-1, p. 3.) Plaintiff contends that this information shows that CMS Defendants and their counsel have misrepresented whether CMS is governed by policies.

The Court will consider Plaintiff's supporting affidavit, to whatever extent that it is relevant, when ruling on Defendants' Motion for Summary Judgment. The Court finds that it is not necessary to supplement or amend Plaintiff's Complaint, and the Motion will be denied as moot.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that there are no genuine issues of material fact upon which liability could be found against them and that Plaintiff's claims should be dismissed as a matter of law. (Dkt. 46, p. 2.) For the reasons that follow, the Court agrees.

1. Factual Background

In his Complaint, Plaintiff alleges generally that prison medical providers have refused to treat his conditions properly and that he suffers from severe and continuous pain. More specifically, Physician's Assistant Paul Delaplain prescribed Naproxen to Plaintiff for his back pain, which Plaintiff alleges should not be given to anyone with liver disease. Delaplain told Plaintiff that if the drug did not work, he could come back in 30 days and seek additional treatment with steroid injection. Plaintiff contends that the "medical profession does not support the use of steroids with persons who have liver disease ..." (Dkt. 3, at ¶ 45.) After Plaintiff questioned the efficacy of the steroid treatment, complaining that he did not want to be a "human guinea pig," Delaplain cancelled the treatment. (*Id*. at ¶ 49.)

MEMORANDUM DECISION AND ORDER - 7

Plaintiff next complains that he has been denied longstanding "medical memos" at ICI-O by Nurse Practitioner York for "restrictions as to standing, bending, lifting, and an extra pillow even though he prescribed such in the past." (Dkt. 3, at ¶ 59.) According to Plaintiff, York has tried to "push Ibuprofen off" on Plaintiff "knowing the same to be forbidden for anyone with liver disease as it damages the liver and stores up in the liver," and York has told him that CMS will not provide double mattresses for his back pain. (*Id.* at ¶ 64, 70.)

Plaintiff also claims that his Hepatitis C has not been treated adequately because "he does not fall within the criteria of CMS not, the standard of care recognized by the medical profession." (Dkt. 3, at ¶ 21.) Plaintiff contends that he is eligible for anti-viral medication to treat this condition but that he is not receiving the medication.

In support of their Motion for Summary Judgment, Defendants have come forward with evidence showing a fuller course of treatment for Plaintiff's medical conditions during the relevant time frame, as follows.

After Plaintiff was transferred back to Idaho from a recent stay in the Wyoming prison system in 2008, he was evaluated for Hepatitis C at the Chronic Disease Clinic. (Affidavit of Rory York, ¶ 8.) In January 2009, Dr. April Dawson determined that while he was positive for "HCV genotype 1B," he was otherwise healthy. (*Id.*) Dr. Dawson informed Plaintiff that he could safely take Tylenol and non-steroidal anti-inflammatory pain relievers (NSAIDs), if needed, despite his liver disease. (*Id.*) Dr. Dawson also ordered a liver biopsy. (*Id.*) The biopsy showed mild inflammation but not "piecemeal

**MEMORANDUM DECISION AND ORDER - 8**

necrosis," and the inflammation and necrosis were graded at a "one over four" each. (York Aff. at ¶ 9.) These results were discussed with Plaintiff, and it was determined that anti-viral Interferon treatment was not warranted. (*Id*.)

Defendants have also supplied an affidavit from Philip Petersen, M.D., who is familiar with Plaintiff's medical history, and who concludes that Plaintiff "has received the most appropriate course of action and best medical care for the diagnosis and treatment of his HCV condition," and that it would not have been appropriate to commence anti-viral therapy. (Affidavit of Philip Peterson, M.D., ¶¶ 18-19.) In light of Plaintiff's medical history and his current symptoms, Dr. Petersen believes that the risks associated with anti-viral therapy outweighed the potential benefits. (*Id*. at ¶ 25.)

Medical records show that Plaintiff's back and hip pain were treated by Paul Delaplain when he returned to IMSI in 2008. (York Aff. at ¶ 13.) Delaplain ordered x-rays and requested Plaintiff's medical records from Wyoming. (*Id*.) Wyoming's records and the new x-rays confirmed some degenerative changes but an "otherwise negative lumbar spine." (*Id*.) Delaplain issued medical memorandums for Plaintiff allowing a lower bunk assignment, an extra pillow, and a heat source. (Id.)

In November 2008, Delaplain determined that Plaintiff should be given Naproxen, an NSAID, and scheduled a follow-up appointment. (York Aff. at ¶ 14.) According to York, Naproxen is medically appropriate for a person with Hepatitis C given Plaintiff's current condition. (*Id*.) Delaplain later ordered an injection of Kenalog, but cancelled that treatment when Plaintiff complained. (*Id*.)

**MEMORANDUM DECISION AND ORDER - 9**

Nurse Practitioner York claims that Plaintiff "has routinely been provided with medical memorandums regarding his medical conditions" after he was transferred to ICI-O. (York Aff. at ¶ 10.) He has been given an extra pillow to use between his legs and a heat source to decrease his lower back pain. (*Id.*) Plaintiff has also been given a chair to use in the shower and the dayroom, an extra blanket, and is assigned to a lower bunk. (*Id.* at ¶ 11.) According to York, Plaintiff has never requested restrictions on standing, lifting, and bending, but if he had, they would not be medically necessary when he is "housed in the medical annex." (*Id.*) York ordered an NSAID and a muscle relaxant for Plaintiff's pain. (Id. at ¶ 15.)

Plaintiff was also examined for back pain in the summer and fall of 2009 by two medical doctors. (York Aff. at ¶¶ 17-19.) Dr. Petersen believed that Plaintiff's pain could be lessened through strengthening exercises, and that an extra mattress and heating pad would not improve his back, though medication could assist him. (*Id.* at ¶ 19.) Plaintiff rejected this suggestion. (*Id.*)

### 2. Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1)(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or

**MEMORANDUM DECISION AND ORDER - 10**

defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(1)(c)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv*., 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e) authorizes the Court to grant summary judgment for the moving party

**MEMORANDUM DECISION AND ORDER - 11**

"if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

     3. <u>Eighth Amendment Standards</u>

To state an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a

**MEMORANDUM DECISION AND ORDER - 12**

deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, [Plaintiff] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk'" to Plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will also not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there is no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

4. Discussion

After reviewing the record in this case, the Court concludes that there is no genuine issue of material fact as to whether CMS, Rory York, or Paul Delaplain have been deliberately indifferent to Plaintiff's serious medical needs. The records instead show that the medical providers have examined and evaluated Plaintiff on numerous

occasions for an array of medical complaints and that they have treated those complaints.[1]

Plaintiff was tested for Hepatitis C at the Chronic Disease Clinic. He was given a liver biopsy, which showed mild inflammation. Dr. April Dawson evaluated the course and staging of the Plaintiff's disease and determined that Interferon treatments were unwarranted. Dr. Petersen concurs that this was the proper treatment.

Plaintiff has been given x-rays to determine the extent of his degenerative disease, and has given medical directives for a lower bunk assignment, a chair in the shower and dayroom, and a heating source. He has also been given access to pain relievers, which he refuses to take based on his own judgment that they are either not effective or harmful to his liver, despite medical opinions to the contrary.

Essentially, Plaintiff's claims against these Defendants are based on his disagreement with them as to whether additional aids, such as a heating pad and an extra mattress, are medically necessary to treat his pain, and whether anti-viral treatment is indicated for his Hepatitis C. A prisoner's disagreement with a medical professional's opinion about the proper course of treatment does not state an Eighth Amendment claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). While the Court does not question that Plaintiff's conditions are serious, there is no evidence in this record from which a jury could reasonably conclude that any of the remaining Defendants have been deliberately

---

[1] Plaintiff objects to Delaplain joining the summary judgment motion because he has not yet had an opportunity to obtain discovery from Delaplain. Based on Plaintiff's allegations, the medical records, and other evidence, it is clear that Delaplain did not violate Plaintiff's Eighth Amendment rights. No useful purpose would be served by prolonging this matter, and Plaintiff's objection is overruled.

**MEMORANDUM DECISION AND ORDER - 14**

indifferent to his medical needs. Defendants have not refused to treat Plaintiff, and he is not entitled to demand that they treat him in precisely the manner that he sees fit. *See, e.g., Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (holding that a prisoner has no right to demand specific treatment).

Throughout these proceedings Plaintiff has taken great pains to argue that CMS has policies and practices to deny treatment to save costs instead of for medical reasons. Defendants have consistently denied these allegations, but, at any rate, the allegations are inapposite to the matter at hand. Even assuming that CMS seeks to cut costs and maximize profit where it can—much like most insurance companies in the health care industry in the outside world—the Court finds nothing in the current factual record to show that CMS's policies or its status as a for-profit company have resulted in deliberate indifference to this Plaintiff's medical needs. Plaintiff's attempt to create a factual issue about whether the denial of an extra mattress or a heating pad was based on a policy or medical necessity is immaterial; Plaintiff was authorized pain medication that he declined to take, a hot water bottle instead of a heating pad, and other accommodations and exercises to assist him in his pain management. The disclosure of the additional document "Correctional Medical Services Infection Control All In One" does not help Plaintiff's policy argument, as it reaffirms that all treatment decisions must be made on a case by case basis after exercising independent medical judgment. The document does not dictate any particular treatment; rather, it appears to offer a checklist to guide providers when evaluating prisoners.

**MEMORANDUM DECISION AND ORDER - 15**

For these reasons, the CMS Defendants' Motion for Summary Judgment will be conditionally granted. The Court will withhold entering final judgment, however, until after Plaintiff has had an opportunity to address the additional discovery that the Court has ordered.

**ORDER**

IT IS ORDERED:

1. Plaintiff's Motion for Declaratory Judgment (Dkt. 50) is DENIED.

2. CMS Defendants' Motion to Strike (Dkt. 61) is DENIED.

3. Plaintiff's Motion for Reconsideration of this Court's Decision and Order of September 17, 2010 (Dkt. 64) is DENIED.

4. Plaintiff's Motion to Supplement the Complaint and/or Record (Dkt. 70) is DENIED, as MOOT, insofar as Plaintiff is seeking to amend or supplement his Complaint. The Court has considered the information in his Affidavit.

5. Plaintiff's Motion to Strike Defendant CMS's, York's, and Delaplain's Amended Answer (Dkt. 75) is DENIED.

6. Plaintiff's Motion for Relief from the Order of 9-17-10 and Sanctions (Dkt. 77) is DENIED.

7. Plaintiff's Objection and Opposition to Paul Delaplain's Motion for Joinder to CMS's Motion for Summary Judgment (Dkt. 78) is DENIED.

8. CMS Defendants' Motion for Summary Judgment (Dkt. 46) is CONDITIONALLY GRANTED.

9. No later than 14 days from the date of this Order, CMS Defendants shall disclose to Plaintiff a copy of the document that has been filed under seal at Dkt. 76, p. 3, or make arrangements for Plaintiff to inspect the document in the presence of a prison paralegal at reasonable times without retaining a copy for his personal records.

10. On or before April 1, 2011, Plaintiff may file a supplemental response, limited solely to showing why the newly disclosed document would alter the Court's conclusion that summary judgment in Defendants' favor is appropriate.

11. On or before April 22, 2011, Defendants may file a supplemental reply limited to that same issue.

12. No other responses or replies shall be filed. If Plaintiff violates this or any of the Court's previous limitations on multiple filings, the Court will not consider the additional filings.

DATED: **February 17, 2011**

Honorable Edward J. Lodge
U. S. District Judge